## CHILDS *v.* HORR.

Where a member of a partnership, executed to a creditor of the firm, his individual note, secured by a responsible indorser, for one-half of the sum due to said creditor by said firm, under an agreement, that if said member of the firm would secure one-half of the amount due by the firm, and get the other partner to secure the other half, the creditor would not press the collection of the original notes (there being three of them), as they became due, but would give the firm some further time; which agreement was never complied with so far as respects the other partner giving security; and where the creditor, while retaining the individual note of the one partner, commenced suit against the partnership on the original indebtedness, and thereupon the individual partner filed his bill in chancery, praying that the creditor be decreed to deliver up the note of the individual partner, and until so delivered, that he be enjoined from prosecuting and collecting the original indebtedness; *Held*, That the condition on which the creditor was to hold the note as security had never transpired; and that he had no right to retain the same, and at the same time prosecute the original notes.

In equity, where a cause is submitted on bill and answer, the answer is taken as true.

*Appeal from the Dubuque District Court.*

THIS cause was heard upon bill and answer.  The bill sets out that complainant and one Hawthorne were in partnership, and as such partners were indebted to respondents in the sum of $750, and that in January, 1855, respondents agreed with complainant, that if he would secure them as to the payment of one-half of said partnership indebtedness, they would release him entirely from the payment of the other half, and that in pursuance thereof, he made and executed a promissory note, secured by a good and responsible indorser, for $375, payable to respondents, and which was received and accepted by them under said agreement; but that said respondents, instead of holding the notes originally given for the indebtedness of the partnership, as mere evidence of the indebtedness of said Hawthorne, have prosecuted the said notes, and are seeking to collect the same against the said complainant, as well as the said Hawthorne, and at the same time retain the note for $375.  The bill then prays, that respondents be decreed to deliver up said note for $375, and until so delivered, they may be enjoined from prosecuting and collecting the original indebtedness against the complainant.

The answer admits the original indebtedness as charged, and that the agreement upon which the $375 note was received, was as follows:  "If Childs would secure one-half of the amount of said original indebtedness, and would get Hawthorne to secure the other half, the defendants would not press the collection of the original notes (there being three of them), as they became due, but would give the defendants some further time; but that the agreement was never fully carried out by the said Childs, though it is true, that he delivered to the defendants the joint and several note of himself and John Griffin (who is admitted to be good security), for $375, which was not received by them in full for said Child's half of the three notes aforesaid, nor of any claim or claims against him, but only as security for part of

said three notes, they being glad to have that part secured. And no security was ever given to these defendants, by the said Hawthorne for any part of said three notes, though these defendants have always been ready and willing to receive the same." And again: "that it always was, and yet is, their intention not to press said Childs to the payment of any part of said three notes, until the 6th of January, 1856 (the time at which the $375 note matures), but that there was no agreement so to do, unless said Hawthorne should also secure one-half of said three notes, and they do now agree not to press the collection of the same." Decree for complainant, requiring respondents to surrender the $375 note, and they now appeal.

*Smith, McKinlay & Poor*, for the appellants.

*Wiltse & Blatchly*, for the appellee.

WRIGHT, C. J.—Respondents now claim that upon this bill and answer, the bill should have been dismissed, and a decree entered in their favor. We think otherwise, however. The question does not arise, whether the second note was, or was not, a satisfaction and discharge in part, of the original promise or indebtedness. There can be no pretence that the respondents were, under the circumstances stated, either in the bill or answer, precluded from suing on the original notes, as against Hawthorne, if not against Childs. As the case now stands, these questions do not become material for our consideration. The answer, of course, is taken as true, and from it, we think it clear, that the $375 note was delivered upon a contract that was not complete at the time, and never has since then been executed. The note was delivered upon condition, that Hawthorne could be induced to secure the other half, which agreement, to use the words of the answer, "has never been fully carried out." What right, then, had the respondents to prosecute the original notes, and at the same time retain in their possession and control, the last one, which they admit was only to be taken

and held as security, even in the event that Hawthorne secured the balance. The condition on which they were to hold the note as security, if not as satisfaction, has never transpired; and they have no right to retain the same, but should deliver it to the maker.

The case of *Cumber* v. *Ware*, 1 Strang, 426 (found in 1 Smith's Leading Cases, 398, marg.), referred to by appellants; does not decide the question involved in this case, but refers alone to the effect of the promising to pay a smaller sum in satisfaction or.discharge of a larger subsisting liability. So with the case of *Cole* v. *Sacket*, 1 Hill, 516. Neither of them hold that a note taken under the circumstances disclosed in this answer, or even analogous thereto, can be retained by the payee, against the maker's objection. And indeed, we are unable to see any fair or plausible reason, for holding that respondents should retain the note. It came into their hands, in effect, to hold and become their property, when a certain other thing was done. Until then, it was not theirs. They have given up nothing, and paid nothing, for it, and cannot be prejudiced by being required to part with the note.

Decree affirmed.